UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW HILL, #197103,

    Plaintiff,

                                               Civil Action No. 2:08-cv-12472

vs.                                     DISTRICT JUDGE ANNA DIGGS TAYLOR
                                            MAGISTRATE JUDGE STEVEN D. PEPE

PATRICIA CARUSO, JAMES ARMSTRONG, PERCY CONERLY,
ERICK BALCARCEL, PATRICK MERRY, SUSAN SPRAGUE,
WAYNE GROAT, JOEL PARKS, PERRY HARKNESS, DAVID JEROME,
DANNY RICE, MICHAEL DESCO, THERESA HYDE, LYLE GILLESPIE,
THOMAS JONES, DAVID MAY, RAUL MARTINEZ, MARK LOOMIS
AND DENNIS KENNEDY,

    Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY
JUDGEMENT BASED ON FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (DKT. #35)**

This is a *pro se* prisoner civil rights action, filed on June 10, 2008, by Michigan Department of Corrections ("MDOC") inmate Andrew Hill. Plaintiff who is currently confined at the Mid-Michigan Correctional Facility in St. Louis, Michigan, asserts violations of his Fourth, Fifth, Eighth and Fourteenth Amendment rights based on averments of a series of events at the Pine River Correctional Facility ("SPR") between November 11, 2007, and April 22, 2008. The Defendants are: (1) MDOC Director Patricia Caruso; (2) Grievance and Appeals Section Administrator James Armstrong; (3) SPR Warden Percy Conerly (4) Deputy Warden Erick Balcarcel; (5) Inspector Patrick Merry; (6) Records Office Supervisor Susan Sprague; (7) State Office of Administrative Hearings and Rules Administrative Law Examiner Wayne Groat; (8) Hearings Investigator Joel Parks; (9) Capt. Perry Harkness; (10) Lt. David Jerome; (11) Lt.

Danny Rice; (12) Assistant Resident Unit Supervisor Michael Deseco; (13) Food Service Leader Theresa Hyde; (14) Food Service Leader Lyle Gillespie, (15) Corrections Officer Thomas Jones; (16) Resident Unit Officer David May; (17) Corrections Officer Raul Martinez; (18) Corrections Officer Mark Loomis; and, (19) R.N. Manager Denise Kennedy.

On September 25, 2008, Defendants filed their motion for summary judgment based on the Plaintiff's failure to exhaust administrative remedies (Dkt. #35). All pre-trial proceedings have been referred in accordance with the authority conferred under 28 U.S.C. §636(b) (Dkt. #8). For the reasons indicated below, it is **RECOMMENDED** that Defendants' motion be **GRANTED.**

I. **BACKGROUND**

The following background information is taken from the allegations stated in Plaintiff's Complaint.

Plaintiff contends false information was included in a Program Classification Report and he was denied access to documents to contest it in November of 2007 (Dkt. #1, pp. 3-4). He wrote the SPR Records Office requesting proof of the accusations in the classification report, and they responded but never sent documents. He wrote Defendant Caruso, asking that documents be forwarded. Plaintiff alleged that the response provided was a deliberate act to circumvent procedures.

Plaintiff further alleges that he was charged with and convicted of unjustified major misconduct charges (Dkt. #1, pp. 4-5). Defendant Jones charged Plaintiff with a prison disciplinary infraction on November 27, 2007, and Plaintiff was found guilty on December 20, 2007. He filed a Request for Rehearing of the hearing officer's decision that was still pending

2

when he filed his civil rights complaint in this Court. Plaintiff alleges that Defendant Kennedy provided an inaccurate statement.

On December 8, 2007, Plaintiff filed a grievance against Defendant Martinez for not letting Plaintiff leave a meeting when he felt ill in December of 2008 (Dkt. #1, p. 5). Plaintiff contends that Defendant Parks improperly rejected the grievance claiming it involved a misconduct charge Martinez had issued. Plaintiff asserts that Defendant Park has a conflict of interest since he serves as both Grievance Coordinator and Hearings Investigator. Additionally, Plaintiff gave Defendant Park questions to submit to Defendant Rice, and Rice never answered the question but allegedly gave an evasive answer in favor of his subordinate.

In February and March of 2008, Defendant Deseco is alleged to have improperly looked at mail Plaintiff was trying to mail out of the facility and conspired with Defendant Sprague to issue a Notice of Intent to Conduct Administrative Hearing (Dkt. #1, pp. 5-7). The mail contained UCC material that the Plaintiff was trying to send to another inmate's sister. Additionally, Defendant Deseco also supposedly ordered Defendant May to search Plaintiff's cell for contraband. A typewriter belonging to another inmate was seized and Plaintiff was given a Contraband Removal Record. Defendant Deseco allegedly conducted an improper and defective hearing regarding the confiscated items. On March 4, 2008 and March 14, 2008, Plaintiff filed Step I grievances against Defendant Deseco related to the above accusations (Dkt. #1, p. 6; Ex. K; Ex. O). Plaintiff also sent Defendant Merry a letter informing Merry that he was prohibited from inspecting the UCC material (Dkt. #1, pp. 5-7).

On March 18, 2008, Plaintiff states he received back four Step I grievances, including those originally submitted on February 28, 2008, March 4, 2008, and March 14, 2008 (Dkt. #1,

p. 7). Plaintiff indicates that on March 18, 2008, and March 20, 2008, he requested four Step II grievance forms, but never received them (Dkt. #1, p. 8). Therefore, on March 26, 2008, Plaintiff filed a grievance against Defendant Grievance Coordinator Joel Parks for not providing Step II grievance appeal forms (Dkt. #1, p. 8; Ex. Y). Plaintiff maintains that Defendant Harkness interviewed Plaintiff on the grievance on April 17, 2008.[1] Plaintiff told Defendant Harkness that supplying the Step II grievance appeal forms at that point would be "fruitless . . . because the due process time limit has expired, and would be ground for dismissal." Defendant Harkness tried to "cover up this mess" by sending Plaintiff's three Step II grievance appeal forms on April 8, 2008. Plaintiff claims that one of the forms was backdated to April 1, 2008, and the other two were postdated to April 14, 2008 (Dkt. #1, p. 8). Plaintiff maintains that all these forms would violate the "10 days rule" in which an inmate may file a Step II grievance appeal form related to the grievances he had rejected at Step I on March 18 (*id.*).

On March 25, 2008, Plaintiff was allegedly assaulted by Defendant Jerome while working in Food Service and placed in the hole without an administrative hearing because Plaintiff asked Defendant Hyde to address him as "Mr. Hill" (Dkt. #1, pp. 9-10). Apparently, Defendant Hyde issued a major misconduct ticket against Plaintiff relating to this event and on March 26, 2008, Plaintiff was reviewed on the major misconduct charge (Dkt. #1, p. 9). Plaintiff states the "ticket was dismissed, because the 'AM Dinning Room Schedule' were (sic) altered" (*id.*).

On April 1, 2008, Plaintiff saw Defendant Deputy Warden Balcarcel in the housing unit

---

[1] As noted further below, Defendant Harkness disputes Plaintiff's contention that he interviewed Plaintiff regarding the Parks' grievance on April 17, 2008. Defendant Harkness indicates that interview took place on April 7, 2008.

and spoke with him, expressing his concerns about what had been happening at the facility and telling Balcarcel he felt uncomfortable at SPR. Plaintiff sent this grievance to Defendant Caruso "under staff corruption" (Dkt. #1, p. 10; Ex. Z).

On or about April 1, 2008, Plaintiff also asked a friend, Floyd Roebuck, to have someone on the outside call the State Police to let them know Plaintiff wanted to file assault and battery charges against Defendant Jerome. Mr. Roebuck called his ex-wife, and Plaintiff spoke with her and told her what had happened and she said she would give them a call. Plaintiff indicates that calls are being monitored and his outgoing mail is being tampered with, not reaching the intended destinations. Plaintiff used his friend's envelope to send information to Plaintiff's sister, but the mail came back stamped "Return to Sender, Address Unknown," but there is no post office stamp showing the date received or returned. Plaintiff received a letter from his sister not long ago, so he indicates he knows she still resides at the same address (Dkt. #1, p. 10).

On April 15, 2008, Plaintiff was told to pack up because he was being moved to a different housing unit, but the officer supposedly didn't know why (Dkt. #1, pp. 11). On April 17, 2008, Plaintiff spoke with another officer and asked why he had been moved. The officers looked at a few papers and said he didn't know. Plaintiff indicates that no one can tell him why he was moved, but the moves were done by Defendant Deseco in retaliation for grievances Plaintiff filed against him. Plaintiff indicates that the move placed him in an observation cube right outside of the Officer's Station. Plaintiff has to be up early in the morning for his job assignment and was not getting proper rest because of the noise from the guys walking up and down the hallway yelling for each other (*id.*).

On April 19, 2008, Plaintiff alleges that Defendants Hyde, Gillespie and Loomis decided

5

to harass, degrade and humiliate the Plaintiff in Food Service (Dkt. #1, p. 11). Plaintiff indicates he grieved the incident on April 21, 2008, but forgot to sign the grievance (Dkt. #1, p. 11; Ex. BB).

On April 22, 2008, Plaintiff was told to pack up and report to the Control Center to be transferred to another facility, the St. Louis Correctional Facility (Dkt. #1, p. 11). Working in Food Service was Plaintiff's only source of income, and being transferred will take up to four to six months before Plaintiff is working again. But more importantly, according to Plaintiff, the parties to this action will still have access to the Plaintiff.

Plaintiff avers liability of the Defendants in their individual and official capacities. He seeks compensatory damages in the amount of $780,000 per Defendant and punitive damages of $10,000 per Defendant, and a declaration that his constitutional rights were violated and an injunction ordering the Defendants to stop harassing him. He wants assault charges filed against Defendant Jerome, removal of the allegedly false information from his file, transfer to a camp, removal of all misconducts from his file, and the submission of all confiscated UCC materials to the Court (Dkt. #1).

Plaintiff filed a number of Step I grievances (Dkt. #1, Ex. K; Ex. M; Ex. O; Ex. T; Ex. W; Ex. X; Ex. Y; Ex. BB). Yet, he did not pursue the second and third step grievance appeals on any of them (Dkt. #35, Ex. 1). Moreover, the Plaintiff did not complete the administrative and State Court review process applicable to the challenged misconduct and property hearings; and the misconduct convictions have not been reversed.

**II.    ANALYSIS**

   **A.    <u>The Legal Standards</u>**

1. <u>Summary Judgment Standards</u>

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely "upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

2. Exhaustion Requirements

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot maintain a civil rights action challenging prison conditions if he did not first exhaust "such administrative remedies as are available." As noted above the PLRA requires a prisoner to follow the state corrections system's procedures and *properly* exhaust all administrative remedies before he may bring a cause of action in federal court. *Woodford v. Ngo*, 126 S. Ct. 2378 (2006). Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 2386. The *Woodford* Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id*. at 2388. Thus, an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement.

Prisoners at MDOC facilities are given the right to "[seek] redress for alleged violations of policy and procedure or unsatisfactory conditions," but prisoners making grievances must follow certain rules and deadlines. PD Preamble. These requirements are laid out in MDOC

8

Policy Directive, Prisoner/Parolee Grievances (the "Policy Directive" or "PD").

In *Jones*, the Supreme Court held that the PLRA does not require that a prisoner name all of the defendants in his grievances. *Jones*, 127 S Ct at 922. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 923. *Jones*, however, was based on a previous version of MDOC Policy Directive 03.02.130 that did not require that prisoners list names of potential defendants in their grievances. *Id.* at 916 (discussing policy effective November 1, 2000). Yet, that policy directive was changed prior to Plaintiff filing his Complaint or grievances. The MDOC has specific administrative procedures that prisoners must follow to exhaust their administrative remedies.

MDOC Policy Directive 03.02.130 lays out a three-step process that prisoners must complete before being considered to have exhausted their claims (Dkt. #35, Ex. 1A, MDOC PD 03.02.130 (Effective July 9, 2007)). There are specific rules in PD 03.02.130 (such as time frames and content policies) that prisoners must follow, or else they face having their grievances rejected. Section T of P.D. 03.02.130 requires prisoners to include names of potential defendants in their grievances.

B. **Factual Analysis**

Under the three-step grievance procedure of MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (eff 07/09/2007), an inmate may submit grievances "regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant." (Dkt. #35, Ex. 1A, ¶ E). Decisions made in administrative hearings are not grievable under the grievance policy (Dkt. #35, Ex. 1A, ¶ F.2). For issues directly related to the administrative hearing process, an inmate's administrative remedies are governed by state

9

law, which provides for the filing of a Request for Rehearing and then state court review of the hearing decision.  *See* Mich Comp Laws § 791.251 *et seq*.

Plaintiff filed a number of grievances regarding the challenged conditions at SPR (Dkt. #1, Ex. K; Ex. M; Ex. O; Ex. T; Ex. W; Ex. X; Ex. Y; Ex. BB).  Yet, he abandoned the grievance process, and failed to pursue those grievances through Step III of the grievance process.  None of the grievances the Plaintiff filed relating to the allegations and claims advanced in this action were filed at Step III (Dkt. #35, Ex. 1).

Plaintiff contends that on March 18, 2008, and March 20, 2008, he requested Step II grievance appeal forms from Defendant Parks relating to four Step I grievance responses received on March 18, 2008, relating to grievances originally submitted on February 28, 2008, March 4, 2008, and March 14, 2008 (Dkt. #1, p. 7).  Plaintiff alleges, however, that Parks failed to send the forms and that on March 26, 2008, Plaintiff therefore filed a grievance against Defendant Grievance Coordinator Joel Parks for not providing Step II grievance appeal forms (Dkt. #1, p. 8; Ex. Y).  Plaintiff claims Defendant Harkness interviewed him on the Parks' grievance on April 17, 2008; at which time Plaintiff informed Harkness that "it would be fruitless to be given a Step II grievance at this stage because the due process time limit has expired, and would be grounds for dismissal."  Plaintiff claims Harkness took his statement and worded it differently, but the fact remains that he did not get grievance forms "when [he] requested them."  He states that Defendant Parks lied when he said he had sent Plaintiff Step II grievance appeal forms.

Plaintiff further claims Defendant Harkness sent him Step II appeal forms on April 8, 2008.  Plaintiff claims that one of the forms was backdated to April 1, 2008, and the other two

10

were postdated to April 14, 2008 (Dkt. #1, p. 8).  Plaintiff maintains that all these forms would violate the "10 days rule" in which an inmate may file a Step II grievance appeal form (*id.*).  Because Plaintiff received the Step I responses on March 18, 2008, Plaintiff was required to file any Step II grievance appeal forms within ten business days of March 18, 2008, or on or before April 1, 2008 (See, Dkt. #35, Ex. 1A, ¶ BB, MDOC PD 03.02.130 (Effective July 9, 2007)).  In Defendants' Response, Defendant Harkness indicates he interviewed the Plaintiff on the Parks' grievance on April 7, 2008 – not April 17th (Dkt. #35, p. 7).  And, Defendant Harkness attests that he does not have access to or send out Step II grievance appeal forms (Dkt. #35, p. 7; Ex 2; *also see,* Dkt. #1, Ex. Y, Harkness' Step I Grievance Response on SPR-2008-03-0218-11G).

Here, instead of pursing his grievance appeals through the grievance process, Plaintiff decided that continuing his grievance appeals would be "fruitless" (Dkt. #1, p. 8).  Futility is not an excuse for an inmate's failure to exhaust the administrative remedies made available to him.  The plain language of 42 U.S.C. § 1997e(a) mandates exhaustion of administrative remedies.  In *Booth v Churner*, 532 U.S. 731, 741 n.6 (2001), the Supreme Court held that the Court "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *See also Cox v Mayer*, 332 F.3d 422, 427 (6th Cir. 2003).  And, the Sixth Circuit has held that an inmate's allegation that he asked for but was not given a grievance form is insufficient to establish exhaustion.  *See Jones v Smith*, 266 F.3d 399 (6th Cir. 2001); *also see Martin v Johnson*, 72 Fed Appx 256 (6th Cir. July 7, 2003) (unpublished decision); *Anderson v. Meeks*, 79 Fed. Appx 113 (6th Cir. Oct 23, 2003) (unpublished decision).  Plaintiff did not complete the grievance process and thus, failed to exhaust his administrative remedies.

Plaintiff also failed to complete the State Court review process applicable to his

challenge to the administrative hearing reports on the misconduct charges and the contraband property confiscation. The inmate indicates that he filed a Request for Rehearing on one of the misconduct charges but indicated that the administrative process was not completed when he filed his civil rights complaint (Dkt. #1, p. 5). If raised as an affirmative defense as is the case here, exhaustion is a statutory precondition to the Plaintiff's filing of a § 1983 action. *See Freeman v. Francis*, 196 F.3d 641 (6th Cir. 1999).

Furthermore, when an inmate seeks the removal of misconducts from his prison file, as does the inmate in this case, he must show that the convictions have been reversed if a ruling in his favor in the federal court case would invalidate the finding of guilt in a prior criminal or grievance proceeding. Under the "favorable termination requirement," a prison inmate's § 1983 action is not cognizable where his claims are based on allegations that necessarily imply the invalidity of a prison disciplinary proceeding, the conviction has not been overturned, and the inmate has lost good-time credits as a result of the conviction. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Muhammad v. Close*, 540 U.S. 749 (2004).

Under Michigan law, eligible MDOC inmates automatically receive good-time or disciplinary credits. An inmate can reduce the length or duration of his confinement through the accumulation of five days worth of good-time or disciplinary credits per month for each month he did not receive a Major Misconduct. An inmate found guilty of a Major Misconduct loses those five days for the month in which the misconduct was committed; and a Warden may forfeit previously-earned good time credits as well. *See* Mich Comp Laws § 800.33. Thus, a guilty finding on a major misconduct ticket would generally affect the duration of confinement. An

inmate can seek a reversal or invalidation of a guilty finding on a major misconduct charge by seeking a rehearing. If unsuccessful, he can file a state court appeal. Mich Comp. Laws § 791.254; Mich Comp Laws § 791.255(2). If unsuccessful in the State Court, the inmate can seek federal relief through a habeas petition since the loss of good-time credits is equivalent to a loss of a "shortened prison sentence." *See Wollf v. McDonnell*, 418 U.S. 539, 556-67 (1974). A challenge to a shortened prison sentence is a challenge to the fact or duration of confinement, and such a challenge is properly brought as an action for habeas corpus – not a civil rights action. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973); 28 U.S.C. § 2254(b)(1). Thus, claims related to the misconduct charges are barred because Plaintiff did not complete the State review process and they are further barred by the favorable termination requirement.

Here, it is apparent that Plaintiff did not exhaust his administrative remedies through the prison grievance process or through the State Court review process applicable to administrative hearing decisions. Accordingly, **IT IS RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED** for lack of exhaustion.

### III. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to

raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

s/Steven D. Pepe<br>
United States Magistrate Judge

Dated: December 9, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 9, 2008.

s/V. Sims<br>
Case Manager